**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MLB ADVANCED MEDIA, L.P. and
MAJOR LEAGUE BASEBALL
PROPERTIES, INC.,

                       Plaintiffs,

           -against-

TERRY COLES,

                   Defendant.

---

CIVIL ACTION NO.

25 CV _____

## <u>COMPLAINT</u>

MLB Advanced Media, L.P. ("MLBAM") and Major League Baseball Properties, Inc. ("MLBP" collectively with MLBAM, "MLB Parties" or "Plaintiffs"), individually and on behalf of the Office of the Commissioner of Baseball ("BOC"), all of the 30 Major League Baseball Clubs (the "MLB Clubs,") including the New York Yankees baseball club (the "Yankees"), and their respective affiliated and related entities, (collectively, with the MLB Parties, the "MLB Entities"), through their attorneys, complaining of defendant, Terry Coles ("Defendant"), allege as follows:

### STATEMENT OF THE CASE

1.      Plaintiffs seek monetary and injunctive relief against the Defendant for numerous causes of action, including but not limited to, (i) trademark counterfeiting, in violation of 15 U.S.C. § 1114; (ii) trademark infringement, in violation of 15 U.S.C. § 1114; (iii) false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125(a); (iv) dilution, in violation of 15 U.S.C. § 1125(c); (v) trademark infringement, in violation of New York General Business Law § 360-k; (vi) injury to business reputation and dilution under New York General Business Law § 360-l; (vii) common law trademark infringement; and (viii) common law unfair competition.

2.      Plaintiffs are the owners and/or exclusive licensees of trademarks associated with the MLB Entities throughout the world. In that capacity, Plaintiffs license a wide variety of goods and services bearing the trademarks of the MLB Entities (e.g. the Yankees and the Mets). The Plaintiffs' products bearing the MLB Trademarks (as defined herein and including those marks identifying the Yankees and the Mets) are sought after and popular among not only sports fans, but also the general consumers of fashion and popular culture.

3.      A common problem for iconic brands, such as the MLB Entities, is that there are those who manufacture, offer for sale and/or sell products that are meant to look like authentic merchandise without the authorization of the brand owners and who illegally benefit from the goodwill associated with these brands. These unscrupulous vendors try to sell their wares to unsuspecting consumers in the areas where these consumers would normally purchase official merchandise. In the case of the MLB Entities, vendors of illicit MLB-related merchandise will offer their wares in many locations around the world, but especially in the regions where the MLB Clubs are located (e.g. the New York City area for the Yankees and the Mets), including near the ballparks of the MLB Clubs (e.g. the area around Yankee Stadium and the area around Citi Field). Defendant is one of those vendors, and his sale of counterfeit inferior wares to the public has damaged Plaintiffs.

4.      The Plaintiffs, at great expense, have commenced and led enforcement efforts around the globe, and specifically in the New York City area, including the vicinity around Yankee Stadium and Citi Field and regularly work with law enforcement in operations against individuals, including the Defendant, and entities selling counterfeit goods bearing Plaintiffs' trademarks. Despite these efforts, Defendant has continued his counterfeiting and infringing activities since at least 2009. Accordingly, Plaintiffs file this action to combat Defendant's infringement of the MLB

Trademarks, as well as to protect unknowing consumers from purchasing products they may mistakenly believe to be authorized by the MLB Entities. Defendant's illegal actions have irreparably harmed and continue to irreparably harm the MLB Entities through consumer confusion, dilution, and tarnishment of their valuable trademarks.

## JURISDICTION AND VENUE

5.      These claims arise under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. § 1114(1). This Court has subject matter jurisdiction over the claims in this action which relate to trademark counterfeiting and infringement, dilution and false designations of origin and false descriptions pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

6.      This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.      This Court has personal jurisdiction over Defendant because, on information and belief, (a) Defendant is domiciled in the State of New York and in this judicial district; (b) markets, distributes, offers for sale, and sells goods that infringe Plaintiffs' intellectual property within the State of New York; (c) regularly transacts and conducts business within the State of New York; and (d) has otherwise made or established contacts with the State of New York sufficient to permit the exercise of personal jurisdiction.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims alleged by Plaintiffs occurred within the City and State of New York and Defendant resides in this judicial district.

**THE PARTIES**

9.      Plaintiff MLBAM is a limited partnership organized under the laws of the State of Delaware with its principal place of business at 1271 Avenue of the Americas, New York, New York 10020. Its general partner is MLB Advanced Media, Inc., a Delaware corporation with its principal place of business at 1271 Avenue of the Americas, New York, New York 10020.

10.      Plaintiff MLBP is a New York corporation with its principal place of business at 1271 Avenue of the Americas, New York, New York 10020.

11.      The MLB Parties are the licensees of and/or act as agents for each of the MLB Entities with respect to a variety of matters, including the licensing and/or protection of intellectual property rights of the applicable MLB Entities throughout the world.

12.      Pursuant to agreements among the MLB Entities, the MLB Parties commercially exploit, protect and enforce rights in the famous and distinctive trademarks, names, logos, symbols, emblems, uniform designs, uniform trade dress colors and other identifying indicia associated with the MLB Entities, including, but not limited to, those that are the subject of valid and subsisting trademark registrations on the Principal Register of the United States Patent and Trademark Office, those that are the subject of valid state registrations, and those that the MLB Entities have adopted and used in commerce throughout the United States (the "MLB Trademarks").

13.      Upon information and belief, Defendant Terry Coles is an individual citizen of the State of New York and resides at 2980 Park Ave, Apartment 9B, Bronx, NY 10451.

14.      Plaintiffs are informed and believe and thereupon allege that at all times relevant hereto, Defendant has purchased, sold, and/or distributed counterfeit and/or infringing goods bearing the MLB Trademarks.

## PLAINTIFFS' ACTIVITIES

15.    The MLB Clubs are professional baseball clubs known throughout the United States and the world. The MLB Entities own by registration or assignment, federal and state trademark and service mark registrations and trade names bearing the Major League Baseball names, logos, and other designs including, but not limited to, the word and design trademarks of BOC (for example: World Series, Fall Classic, the World Series Trophy, American League of Professional Baseball Clubs, and National League of Professional Baseball Clubs), the word and design trademarks of MLBP (for example: Silhouetted Batter Logo and Major League Baseball), any other word and design trademarks of the MLB Entities, including without limitation the word and design trademarks of the MLB Clubs. The MLB Trademarks are used on and/or in connection with a variety of goods including, but not limited to, adult and children's apparel, baseball caps, headwear, sporting goods, sports accessories, novelties, publications, trading cards, household merchandise, souvenirs and related products (the aforementioned diverse goods bearing and/or identified by the MLB Trademarks are hereinafter referred to as the "MLB Products").

16.    Plaintiffs, by authorization of the other MLB Entities, are responsible for protecting the MLB Trademarks from infringement, dilution, disparagement, misappropriation, counterfeiting, and unfair competition.

17.    Plaintiffs are the sole and exclusive licensors in the United States of the MLB Products.

18.    Plaintiffs and each of the other MLB Entities adopted the MLB Trademarks and have used and licensed the use of the MLB Trademarks on MLB Products for many years, and in some instances decades.

5

19.     Plaintiffs and the other MLB Entities have registered with the United States Patent and Trademark Office and State trademark offices the trademarks attached hereto as <u>Exhibit A</u> (the "MLB Registrations").

20.     The MLB Registrations are in full force and effect and many of them have become incontestable pursuant to 15 U.S.C. § 1065. The MLB Trademarks and goodwill of the businesses of the MLB Parties and the respective MLB Entities in connection with which the trademarks are used have never been abandoned. Plaintiffs preserve and maintain their rights and the rights of the respective MLB Entities with respect to the MLB Trademarks and in the MLB Registrations.

21.     Plaintiffs, themselves and through licensees, as a business policy, have established and maintain high standards of quality for products bearing one or more of the MLB Trademarks. The MLB Parties maintain stringent quality control over licensees of the MLB Trademarks with respect to the style and quality of licensed goods sold or offered for sale bearing the MLB Trademarks in order to preserve and protect the valuable rights therein.

22.     In supervising licensees, the MLB Parties provide licensees and licensed product manufacturers with official specifications setting forth extensive details with respect to use of trademark registration symbols, typeface and typography, color renderings, official uniform scripts, graphic design, materials, workmanship, and quality. All licensed products and designs are thereafter reviewed under strict quality control procedures by the MLB Parties, their licensing agents, where appropriate, and/or the other MLB Entities. Quality control procedures include submission and review prior to final approval of sketches and concepts, finished artwork, pre-production samples, and finished products, and review of related sales, marketing and advertising materials. The foregoing quality control procedures assure that all such goods bearing or associated with the MLB Trademarks will be identified by purchasers as high-quality goods emanating from,

licensed by, sponsored, or authorized by Major League Baseball. Plaintiffs and the MLB Entities expend significant time and money in their quality control efforts to ensure that the licensed products being sold to their consumers are of the highest quality.

23.     All licensees of the MLB Parties are subject to further requirements and specifications concerning use of hangtags, labels and/or holograms that are attached to the MLB Products or their packaging, with the purpose of identifying to the purchasers of MLB Products that such goods are authentic.

24.     The MLB Parties maintain strict guidelines for their licensees as to the online and offline distribution channels for MLB Products.

25.     The MLB Parties and their licensees have widely distributed throughout the United States and worldwide the aforementioned MLB Products. There is a substantial public demand for such goods, and because of said public demand, the right to manufacture, sell, and/or distribute such goods is a valuable commercial property right.

26.     The authorized MLB Products bearing the MLB Trademarks have been advertised by the MLB Parties and their licensees to the purchasing public and to the trades throughout the United States and internationally on an extensive and frequent basis by a variety of media, including newspaper, magazines, television, radio, the Internet, trade publications, and baseball game programs.

27.     The MLB Products, by reason of their style, design excellence, and quality of workmanship, have come to be known to the purchasing public throughout the United States and worldwide as representing products of the highest quality. Millions of dollars are spent each year by the MLB Parties, the other MLB Entities, and their licensees and/or sponsors on advertising and promoting MLB Products, and their integrity, quality, and superior workmanship.

28.    By virtue of the wide renown of the MLB Trademarks and wide geographic distribution and extensive sale of various goods bearing those trademarks, the MLB Trademarks have developed secondary meaning and significance in the minds of the purchasing public and are famous and distinctive. The MLB Products are immediately identified by the purchasing public as being associated with the applicable MLB Entity(ies). The MLB Products have been and are now recognized by the public and the trade as originating from the MLB Parties, on their own and on behalf of the other MLB Entities.

29.    For decades, Plaintiffs and each of the other MLB Entities have developed their reputations and distinctive images in both domestic and international markets.

30.    Plaintiffs and each of the other MLB Entities advertise, market, and sell their diverse goods through numerous distribution channels including but not limited to exclusive retail stores, department stores, and online through the MLB merchandise website, mlbshop.com.

31.    Plaintiffs own or manage in excess of 1,000 Major League Baseball-related trademark registrations with the United States Patent & Trademark Office, including but not limited to those listed on Exhibit A attached hereto.

32.    Plaintiffs and each of the other MLB Entities have gone and continue to go to great lengths, including spending significant time and money on enforcement efforts, to protect their names and enforce the MLB Trademarks.

## DEFENDANT'S COUNTERFEITING & INFRINGING ACTIVITIES

33.    In blatant disregard of Plaintiffs' well-established rights in the MLB Trademarks, despite repeated warnings, and without authorization or approval from Plaintiffs, Defendant has counterfeited and infringed, continues to counterfeit and infringe, and threatens to further counterfeit and infringe the MLB Trademarks by distributing and selling unauthorized

merchandise, including but not limited to, apparel, baseball caps, and headwear, bearing one or more identical, substantially indistinguishable, or confusingly similar copies of the MLB Trademarks ("Infringing Goods").

34.     Defendant has a history of repeatedly violating Plaintiffs' rights by advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods in the area near Yankee Stadium and in the area near Citi Field. Defendant has been engaging in his infringing and counterfeiting activities since at least 2009, and was seen as recently as August 8, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

35.     On August 26, 2009, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

36.     On September 11, 2015, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for unlicensed general vending while distributing, offering for sale, and/or selling Infringing Goods.

37.     On April 19, 2017, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for unlicensed general vending while distributing, offering for sale, and/or selling Infringing Goods.

38.     On October 9, 2017, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. Defendant was arrested for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods. The New York Police Department seized the Infringing Goods, consisting of 10 counterfeit Yankees caps.



39.    On April 19, 2018, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

40.    On May 5, 2018, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

41.    On May 8, 2018, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

42.    On June 21, 2018, Defendant was arrested near East 161st Street and River Avenue, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

43.    On March 29, 2024, Defendant was observed at 123-01 Roosevelt Avenue, Queens, New York 11368, advertising, marketing, distributing, offering for sale, and/or selling Infringing

Goods, as reflected in the photographs below. The New York Police Department served Defendant

with a Civil Summons for unlicensed vending and seized the Infringing Goods, consisting of 22

counterfeit Mets caps and 10 counterfeit Mets t-shirts.





44.     On June 7, 2024, Defendant was observed at the corner of East 161st Street and

River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale,

and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs'

enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result,

Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 18 counterfeit

Yankees caps.



45.    On July 12, 2024, Defendant was arrested outside Citi Field near 123-01 Roosevelt Avenue, Queens, New York 11368, for obstructing governmental administration.

46.    On July 24, 2024, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 10 counterfeit Yankees caps and 10 counterfeit Mets caps.



47.     On August 25, 2024, Defendant was observed near East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 21 counterfeit Yankees caps.



48.     On September 14, 2024, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 24 counterfeit Yankees caps.





49.     On October 5, 2024, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 13 counterfeit Yankees caps.



50.    On October 7, 2024, Defendant was observed on two separate occasions at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with cease and desist letters and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, totaling 23 counterfeit Yankees caps.





51.    On October 14, 2024, Defendant was observed on three separate occasions at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, totaling 15 counterfeit Yankees caps.



52.    On October 15, 2024, Defendant was observed on two separate occasions at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with cease and desist letters and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, totaling 4 counterfeit Yankees caps and 5 counterfeit Yankees t-shirts.





53.    On October 28, 2024, Defendant was observed on two separate occasions at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs

below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with cease and desist letters and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, totaling 2 counterfeit Yankees hats and 14 counterfeit Yankees t-shirts.





54.    On October 29, 2024, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 1 counterfeit Yankees t-shirt.



55.     On October 30, 2024, Defendant was observed on five separate occasions at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with cease and desist letters and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, totaling 39 counterfeit Yankees t-shirts and 5 counterfeit Yankees hats.







56.     On March 27, 2025, Defendant was observed on two separate occasions at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as reflected in the photographs

below. On the first occasion, Plaintiffs' investigator made an undercover purchase from Defendant of a counterfeit Yankees t-shirt, as depicted in the photographs below. On the second occasion, as part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 14 counterfeit Yankees caps and 6 counterfeit Yankees t-shirts.







57.    On March 29, 2025, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 15 counterfeit Yankees caps.



58.     On March 30, 2025, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 6 counterfeit Yankees caps.



59.     On April 4, 2025, Defendant was observed outside of Citi Field on the Flushing Meadows-Corona Park pedestrian bridge, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. Plaintiffs' investigator made an undercover purchase from Defendant of a counterfeit Mets t-shirt, as depicted in the photographs below.



60.    On May 1, 2025, Defendant was observed outside of Citi Field on the Flushing

Meadows-Corona Park pedestrian bridge, advertising, marketing, distributing, offering for sale,

and/or selling Infringing Goods. Plaintiffs' investigator made an undercover purchase from

Defendant of a counterfeit Yankees cap, as depicted in the photographs below.



61.    On May 16, 2025, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. Plaintiffs' investigator made an undercover purchase from Defendant of a counterfeit Mets cap. Subsequently, as part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 44 counterfeit Yankees and Mets caps.





62.    On May17, 2025, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below.



63.    On May 18, 2025, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 8 counterfeit Yankees and Mets caps.





64.    On June 1, 2025, Defendant was arrested in front of 123-01 Roosevelt Avenue, Queens, New York 11368, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. The New York Police Department seized the Infringing Goods, consisting of 54 counterfeit Mets caps.



65.    On August 8, 2025, Defendant was observed at the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Defendant with a cease and desist letter and as a result, Defendant agreed to voluntarily surrender the Infringing Goods, consisting of 147 counterfeit Yankees and Houston Astros caps.





66.    Long after Plaintiffs and each of the other MLB Entities' use and registration of the MLB Trademarks, Defendant, on information and belief, commenced the distribution, and/or sale of the Infringing Goods bearing counterfeits and infringements of the MLB Trademarks as those trademarks appear on Plaintiffs' products and as shown in Exhibit A to this Complaint.

67.    The activities of Defendant complained of herein constitute willful and intentional counterfeiting and infringement of the MLB Trademarks, are in total disregard of Plaintiffs' rights, and were commenced and have continued in spite of Defendant's knowledge that the use of any of the MLB Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiffs' rights.

68.    Use by Defendant of identical, substantially indistinguishable and/or confusingly similar copies of the MLB Trademarks has been without Plaintiffs' consent, is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does

falsely create the impression that the Infringing Goods sold by Defendant are authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

69.    The likelihood of confusion, mistake, and deception engendered by Defendant's misappropriation of the MLB Trademarks is causing irreparable harm to the goodwill symbolized by the MLB Marks and the reputation for quality that they embody.

70.    Upon information and belief, by virtue of his unlawful conduct, Defendant has made profits and gains to which he is not entitled in law or equity.

**FIRST CAUSE OF ACTION**
**TRADEMARK COUNTERFEITING**
**15 U.S.C § 1114**

71.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

72.    Defendant has used spurious designations that are identical with, or substantially indistinguishable from, the MLB Trademarks on goods covered by registrations for the MLB Trademarks.

73.    Defendant is intentionally and willfully using these spurious designations knowing they are counterfeit in connection with the advertising, sale, offering for sale and distribution of counterfeit goods for his own personal financial gain and such intentional and willful conduct by the Defendant makes this an exceptional case.

74.    Defendant's use of the MLB Trademarks to advertise, offer for sale, sell and distribute Defendant's counterfeit products was and is without the consent of Plaintiffs.

75.    Defendant's unauthorized use of the MLB Trademarks on and in connection with the advertising and sale of counterfeit goods constitutes Defendant's use of the MLB Trademarks in commerce.

76.     Defendant's unauthorized use of the MLB Trademarks as set forth above is likely

to:

(a)     cause confusion, mistake and deception;

(b)     cause the public to believe that Defendant's counterfeit products are the same as Plaintiffs' products and/or that Defendant is authorized, sponsored or approved by Plaintiffs or that Defendant is affiliated, connected or associated with or in some way related to Plaintiffs or the other MLB Entities; and

(c)     result in Defendant unfairly benefiting from the MLB Entities' advertising and promotion and profiting from the reputation of the MLB Entities and the MLB Trademarks all to the substantial and irreparable injury of the public, Plaintiffs and the MLB Trademarks and the substantial goodwill represented thereby.

77.     Defendant's acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

78.     Defendant's wrongful acts of counterfeiting will continue unless enjoined by this Court.

79.     Plaintiffs have no adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of Defendant's acts as aforesaid in an amount not thus far determined.

80.     Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

## SECOND CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

81.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

82.     The MLB Trademarks are fanciful and arbitrary and are associated in the mind of the public with Plaintiffs and the other MLB Entities.

83.    Based on Plaintiffs' extensive advertising, sales and the wide popularity of Plaintiffs' products, the MLB Trademarks have acquired secondary meaning so that any product or advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product and affiliate of Plaintiffs.

84.    Defendant uses the MLB Trademarks in connection with Defendant's sale, distribution and advertising of his counterfeit and infringing goods.

85.    Defendant's activities as aforesaid constitute Defendant's use in commerce of the MLB Trademarks.

86.    Defendant has used the MLB Trademarks without Plaintiffs' consent or authorization. Defendant's use, including the sale and distribution of infringing products in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendant's products emanate or originate from Plaintiffs or the other MLB Entities, or that Plaintiffs have approved, sponsored or otherwise associated themselves with Defendant, all of which is untrue.

87.    Defendant has intentionally used the MLB Trademarks in connection with the offering for sale, sale, and distribution of counterfeit goods, knowing they are the exclusive property of Plaintiffs or the other MLB Entities.

88.    Defendant's conduct is intended to exploit the goodwill and reputation associated with the MLB Trademarks.

89.    Plaintiffs have no control over the quality of Defendant's counterfeit merchandise. Because of the very real likelihood of confusion as to the source of Defendant's products, Plaintiffs' reputation and the valuable goodwill in the MLB Trademarks are at the mercy of Defendant's unscrupulous tactics.

90.     Defendant's activities as aforesaid create the false and misleading impression that Defendant is sanctioned, assigned or authorized by Plaintiffs to use the MLB Trademarks to advertise, distribute, appraise, offer for sale or sell counterfeit products bearing the MLB Trademarks when Defendant is not so authorized.

91.     Defendant engages in the aforementioned activity with the intent to confuse and deceive consumers into believing that Defendant and the goods he sells are in some way sponsored by, affiliated or associated with Plaintiffs or the other MLB Entities when the Defendant is not.

92.     Defendant's unauthorized use of the MLB Trademarks as set forth above has resulted in Defendant unfairly benefiting from Plaintiffs' advertising and promotion and profiting from Plaintiffs' reputation and the MLB Trademarks, to the substantial and irreparable injury of the public, Plaintiffs and the MLB Trademarks and the substantial goodwill represented thereby.

93.     Defendant's aforesaid acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

94.     Defendant's acts have caused, and will continue to cause, great and irreparable injury to Plaintiffs, and unless such acts are restrained by this Court, they will continue, thereby causing Plaintiffs to continue to suffer great and irreparable injury. Plaintiffs have no adequate remedy at law.

95.     Plaintiffs are informed and believe and thereon allege that Defendant's infringement is both intentional and egregious.

96.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

97.     Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

### THIRD CAUSE OF ACTION
### FALSE DESIGNATIONS OF ORIGIN,
### FALSE DESCRIPTIONS AND REPRESENTATIONS
### 15 U.S.C. § 1125(a)

98.     Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

99.     Defendant has, in connection with his goods, used in commerce, and continue to use in commerce, the MLB Trademarks.

100.     Defendant has affixed, applied and used in connection with his sale of goods, false designations of origin and false and misleading descriptions and representations, including the MLB Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by the Plaintiffs of the goods sold by the Defendant.

101.     Defendant uses one or more of the MLB Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

102.     Defendant's use of the MLB Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or represent Defendant and Defendant's products as being authorized, sponsored, affiliated or associated with Plaintiffs or the other MLB Entities.

103.     Defendant uses one or more of the MLB Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high-quality reputation of Plaintiffs and to improperly appropriate to themselves the valuable trademark rights of Plaintiffs or the other MLB Entities.

104.     Defendant's aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or

misleadingly describe and/or represent Defendant's products as those of Plaintiffs or the other

MLB Entities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

105.    Defendant's wrongful acts will continue unless enjoined by this Court.

106.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and

damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

107.    Upon information and belief, Defendant has obtained gains, profits and advantages

as a result of his wrongful acts in an amount thus far not determined.

**FOURTH CAUSE OF ACTION**
**FEDERAL TRADEMARK DILUTION**
**15 U.S.C. § 1125(c)**

108.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though

fully set forth herein.

109.    Plaintiffs are the exclusive licensors of the MLB Trademarks listed on Exhibit A

attached hereto.

110.    Defendant's use of MLB Trademarks on the counterfeit goods they sell constitutes

Defendant's commercial use in commerce of the MLB Trademarks.

111.    The MLB Trademarks have been used for years, and in some instances decades,

and are so globally recognized and associated with Plaintiffs or the other MLB Entities that they

are entitled to be recognized as famous and distinctive under 15 U.S.C. § 1125(c).

112.    The MLB Trademarks have come to have a secondary meaning indicative of origin,

relationship, sponsorship and/or association with the Plaintiffs or the other MLB Entities and their

distinctive reputation for high quality. The purchasing public is likely to attribute to Plaintiffs or

the other MLB Entities, Defendant's use of MLB Trademarks as a source of origin, authorization

and/or sponsorship for the products Defendant sells and further, purchases Defendant's products

35

in the erroneous belief that Defendant is associated with, sponsored by or affiliated with Plaintiffs

or the other MLB Entities, when Defendant is not.

113.    Plaintiffs have not authorized or licensed the use of MLB Trademarks to Defendant.

114.    Defendant's unauthorized use of the MLB Trademarks in his marketing, sale and

distribution of counterfeit products are diluting the distinctive quality of MLB Trademarks and the

goodwill associated with them in violation of Section 43(a) of the Lanham Act, 15 U.S.C §

1125(c).

115.    Such conduct has injured Plaintiffs and each of the other MLB Entities and said

injury will continue unless the Court enjoins Defendant from committing further wrongful acts.

116.    Upon information and belief, Defendant intentionally and willfully utilized MLB

Trademarks and traded on Plaintiffs' reputation and goodwill.

117.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and

damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

118.    Upon information and belief, Defendant has obtained gains, profits and advantages

as a result of his wrongful acts in an amount thus far not determined.

### FIFTH CAUSE OF ACTION
### INJURY TO BUSINESS REPUTATION AND DILUTION
### NEW YORK GENERAL BUSINESS LAW § 360-l

119.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though

fully set forth herein.

120.    Plaintiffs, on behalf of the general public, as well as for themselves, seek recovery

from Defendant for violation of New York General Business Law § 360-l, et seq.

121.    By virtue of Defendant's unauthorized use of MLB Trademarks, such use trading

on the goodwill associated with Plaintiffs or the other MLB Entities, Defendant has misled and

will continue to mislead the public into assuming a connection between Plaintiffs or the other MLB
Entities and Defendant's products.

122.    By falsely suggesting a connection with or sponsorship by Plaintiffs or the other
MLB Entities, Defendant is likely to cause public confusion constituting unfair competition within
the meaning of New York General Business Law § 360-l.

123.    If such action on the part of Defendant continues, Plaintiffs and the other MLB
Entities will suffer irreparable harm of a continuing nature for which there is no adequate remedy
at law.

124.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and
damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

125.    Upon information and belief, Defendant has obtained gains, profits and advantages
as a result of his wrongful acts in an amount thus far not determined.

**SIXTH CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT UNDER NEW YORK LAW**
**NEW YORK GENERAL BUSINESS LAW § 360-k**

126.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though
fully set forth herein.

127.    Defendant uses the MLB Trademarks in connection with Defendant's sale,
distribution and advertising of his counterfeit and infringing goods.

128.    Defendant has used the MLB Trademarks without Plaintiffs' consent or
authorization. Defendant's use, including the sale and distribution of infringing products, is likely
to cause confusion and mistake in the minds of the public, leading the public to believe that
Defendant's products emanate or originate from Plaintiffs or the other MLB Entities, or that

Plaintiffs have approved, sponsored or otherwise associated themselves with Defendant, all of which is untrue.

129.    Defendant's activities as aforesaid create the false and misleading impression that Defendant is sanctioned, assigned or authorized by Plaintiffs to use the MLB Trademarks to advertise, distribute, appraise, offer for sale or sell counterfeit products bearing the MLB Trademarks when Defendant is not so authorized.

130.    Defendant engages in the aforementioned activity with the intent to confuse and deceive consumers into believing that Defendant and the goods it sells are in some way sponsored by, affiliated or associated with Plaintiffs or the other MLB Entities when the Defendant is not.

131.    Defendant's acts as described above constitute trademark infringement under New York state law.

132.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

133.    Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

### SEVENTH CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT

134.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

135.    Defendant's acts previously alleged herein constitute common law trademark infringement.

136.    Plaintiffs are without adequate remedy at law, as Defendant's acts have caused Plaintiffs irreparable harm to their business reputation, goodwill and stature in the business community.

137.    Plaintiffs are informed and believe and thereon allege that Defendant committed the above alleged acts oppressively, fraudulently, maliciously and in conscious disregard of Plaintiffs' rights, and Plaintiffs are therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendant.

138.    The distribution and sale of the unauthorized and infringing products by Defendant is without any permission, license or other authorization from Plaintiffs or the other MLB Entities. The aforesaid unauthorized products are being distributed and sold in interstate commerce.

139.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

140.    Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

### EIGHTH CAUSE OF ACTION
### MISAPPROPRIATION AND UNFAIR COMPETITION
### UNDER NEW YORK COMMON LAW

141.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

142.    Defendant's aforesaid acts constitute misappropriation and infringement of Plaintiffs' property rights, goodwill and reputation and unfair competition under the common law of the State of New York.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

I.       That permanent injunctions be issued enjoining and restraining Defendant and is officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

A.       Using any reproduction, counterfeit, copy or colorable imitation of the MLB Trademarks to identify any goods or the rendering of any services not authorized by Plaintiffs;

B.       Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of Plaintiffs' names and the MLB Trademarks;

C.       Using a false description or representation including words or other symbols tending to falsely describe or represent Defendant's unauthorized goods as being those of Plaintiffs or the other MLB Entities or sponsored by or associated with Plaintiffs or the other MLB Entities and from offering such goods into commerce;

D.       Further infringing the MLB Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by Plaintiffs bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the MLB Trademarks;

E.       Using any simulation, reproduction, counterfeit, copy or colorable imitation of the MLB Trademarks in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or

40

connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs or the other MLB Entities;

F.   Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or rented by Defendant is in any manner associated or connected with Plaintiffs or the other MLB Entities, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

G.   Constituting an infringement of any of the MLB Trademarks or of Plaintiffs' rights in, or to use or to exploit, said MLB Trademarks, or constituting any dilution of Plaintiffs' name, reputation or goodwill;

H.   Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the MLB Trademarks;

I.   Selling, offering for sale, or advertising any merchandise bearing the MLB Trademarks on the Internet or in e-commerce, including but not limited to all forms of social media; and

J.   Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (A) through (I).

II.        Directing that Defendant deliver up for destruction to Plaintiffs all unauthorized products and advertisements in his possession or under his control bearing any of the MLB Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

III.       Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendant are authorized by Plaintiffs or related in any way to Plaintiffs' products.

IV.       Directing Defendant to supply Plaintiffs with the name and address of each person or entity from whom or from which it has purchased any item bearing the MLB Trademarks.

V.        Directing Defendant, within thirty (30) days after the service of judgment upon it, with notice of entry thereof, to file with the Court, and serve upon Plaintiffs, a written report under oath setting forth in detail the manner in which Defendant has complied with paragraphs I through IV above.

VI.       Awarding to Plaintiffs the Defendant's profits from his unlawful acts herein alleged as Defendant's total sales of merchandise bearing any one or more of the MLB Trademarks, less any elements of cost or deductions proved by Defendant and allowed by law.

VII.      Awarding to Plaintiffs the damages from Defendant's unlawful acts herein alleged.

VIII.     Pursuant to 15 U.S.C. § 1117(a), directing Defendant to pay Plaintiffs all of the profits assessed pursuant to paragraph VI, *supra*, together with three times the amount of damages assessed pursuant to paragraph VII, *supra*, with prejudgment interest on the foregoing sums.

IX.       In the event that the Court determines that Defendant intentionally used a mark knowing that such mark was a counterfeit mark, directing Defendant to pay Plaintiffs:

A.     Pursuant to 15 U.S.C. § 1117(a) and (b) all of the profits assessed pursuant to paragraph VI, *supra*; plus;

B.     Pursuant to 15 U.S.C. § 1117(a) and (b) three times the profits assessed pursuant to paragraph VI, *supra*, or three times the damages assessed pursuant to paragraph VII, *supra*, whichever is greater; and

C.     Prejudgment interest on the foregoing sums at an annual interest rate established under 26 U.S.C. § 6621(a)(2) commencing as of the date if the service of the Complaint herein.

X.     Ordering that Plaintiffs recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

XI.     Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

XII.     Awarding to Plaintiffs such other and further relief as the Court may deem just and proper, together with the costs and disbursements which Plaintiffs have incurred in connection with this action.

Dated: August 20, 2025
      New York, New York

                                            Respectfully submitted,

                                            BAKER & HOSTETLER LLP

                                            By:  */s/ Robertson D. Beckerlegge*
                                            Robertson D. Beckerlegge
                                            Heather J. McDonald
                                            Megan A. Corrigan
                                          45 Rockefeller Plaza
                                          14th Floor
                                          New York, NY 10111
                                          Tel: (212) 589-4200
                                          Fax: (212) 589-4201

                                          *Attorneys for Plaintiffs MLB Advanced Media, L.P. and Major League Baseball Properties, Inc.*

44